```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

ANGELA ATKINS and
TEDDY ATKINS, II,

    Plaintiffs,

v.                            Civil Action No. 2:11-cv-00925

COLOMER BEAUTY BRANDS USA, INC.,
a Delaware Corporation
d/b/a "Creative Nail Designs, Inc." and
COLOMER USA, INC.,
a Delaware Corporation
d/b/a "Creative Nail Designs, Inc." and
CREATIVE NAIL DESIGNS, INC.,
a California Corporation and
HAIR WE ARE, INC.,
a West Virginia Corporation and
L'OREAL USA, INC.,
a New York Corporation
f/k/a "Cosmair, Inc."
d/b/a "Redken 5th Avenue NYC"
d/d/a "Matrix Products" and
O P I PRODUCTS, INC.,
a Delaware Corporation and
REDKEN LABORATORIES LLC,
a New York Corporation and
REVLON, INC.,
a Delaware Corporation
f/k/a "Creative Nail Designs, Inc." and
S&S BEAUTY SUPPLIES, INC.,
an Ohio Corporation,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are plaintiffs' motion to remand, filed December 1, 2011, and defendant Hair We Are, Inc.'s motion to dismiss, filed December 23, 2011.

1

When, as here, a motion to remand and a Rule 12(b)(6) motion to dismiss are both made, it is ordinarily improper to resolve the Rule 12(b)(6) motion before deciding the motion to remand. The question arising on the motion to remand as to whether there has been a fraudulent joinder is a jurisdictional inquiry. See Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3rd Cir. 1992); cf. Mayes v. Rapoport, 198 F.3d 457, 460 (4th Cir. 1999) (observing that the propriety of removal and fraudulent joinder are jurisdictional questions).

## I.

This is a product liability case brought under West Virginia law for injuries suffered by plaintiff Angela Atkins as the alleged result of her exposure to benzene-containing hair and nail products. The following facts are taken from the original complaint.

Plaintiffs Angela Atkins and her husband, Teddy Atkins, II, are West Virginia residents. Defendant Hair We Are, Inc. (the "non-diverse defendant"), is a West Virginia corporation with its principal place of business in Charleston, West Virginia. Defendants Colomer Beauty Brands USA, Inc.; Colomer USA, Inc.; Creative Nail Designs, Inc.; L'Oreal USA, Inc.; OPI Products, Inc.; Redken Laboratories LLC; Revlon, Inc.; and S&S Beauty Supplies, Inc.

(the "diverse defendants") are all corporate citizens of states other than West Virginia.[1]

According to the complaint, scientists have recognized a causal link between the inhalation of benzene and certain types of cancer, including leukemia, since the early 1920s.  By the 1940s, the American Petroleum Institute noted that any level of exposure to benzene posed a risk of causing cancer.  (Compl. at ¶ 4).  This information was "widely known" and easily accessible to employers, manufacturers, and suppliers of benzene and benzene-containing products.  (Id. at ¶ 5).

Plaintiff Angela Atkins alleges that she worked in salons as a hairdresser and manicurist and was exposed to benzene or benzene derivatives from the use of hair dyes and acrylic nail products "manufactured, distributed, and/or supplied by Defendants."  (Id. at ¶ 6).  As a result, she alleges, she now suffers from Acute Myeloid Leukemia ("AML"), a form of cancer that can be fatal.

On October 11, 2011, plaintiffs commenced this action in the Circuit Court of Kanawha County, West Virginia.  Seven counts are alleged:  1) negligence, 2) strict liability, 3) breach of

---

[1] Plaintiffs' claims against former defendant Bristol-Myers Squibb Co., also a diverse defendant, were voluntarily dismissed without prejudice on December 8, 2011 (Dkt. No. 19).

3

warranty, 4) "defendants' intentional torts," 5) misrepresentation, 6) post-sale duty to warn, and 7) loss of consortium.  (Compl. ¶¶ 8-40).  Plaintiffs request compensatory and punitive damages.

On November 17, 2011, defendants timely removed the case to this court.  In the Notice of Removal, defendants assert that the non-diverse defendant had been "fraudulently joined by the Plaintiffs because the Complaint fails to make any specific allegations of misconduct directed at Hair We Are, Inc."  Attached to the Notice of Removal is the affidavit of Rhonda Jacobs, the former owner of Hair We Are (the "Jacobs affidavit"), that asserts that benzene-containing hair and nail products were not sold or supplied by it to Angela Atkins.  (Jacobs Aff. at ¶ 5).  Defendants thus requested that the court disregard Hair We Are's corporate citizenship for jurisdictional purposes.  In response, plaintiffs filed the motion to remand now before the court and an accompanying declaration under penalty of perjury (the "Atkins declaration") that Hair We Are did indeed sell such products to her.  (Atkins Decl. at ¶ 4).  Plaintiffs contend that defendants' fraudulent joinder theory should be rejected, inasmuch as defendants have failed to meet their burden of showing that plaintiffs have no possibility of recovery against Hair We Are.

4

II.

A.  Governing Standard

"A defendant may remove any action from a state court to a federal court if the case could have originally been brought in federal court." Yarnevic v. Brink's, Inc., 102 F.3d 753, 754 (4th Cir. 1996) (citing 28 U.S.C. § 1441).  Federal district courts have original jurisdiction over actions between citizens of different states in which the matter in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).

The doctrine of fraudulent joinder permits a district court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999).  Our court of appeals lays a "heavy burden" upon a defendant claiming fraudulent joinder:

> "In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

Id. at 464 (emphasis in original) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).  The applicable standard

5

"is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). Indeed, "'the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.'" Mayes, 198 F.3d at 464 (quoting Marshall, 6 F.3d at 232-33)).

As Hartley illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand. See Hartley, 187 F.3d at 425. At bottom, a plaintiff need only demonstrate a "glimmer of hope" in order to have his claims remanded:

> In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . various uncertain questions of law and fact . . . Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.
>
> * * * *
>
> We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case. [Plaintiff's] claims may not succeed ultimately, but ultimate success is not required . . . . Rather, there need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.

6

**Id.** at 425-26 (citations omitted).

Inasmuch as defendants do not allege any fraud in the pleading of jurisdictional facts, the only question for fraudulent joinder purposes is whether plaintiffs have any possibility of recovery against the non-diverse defendant, Hair We Are.

B.  Motion to Remand

   1.  Scope of the Record

As a preliminary matter, the court considers the scope of the record upon which it may base its ruling on plaintiffs' motion to remand.  At the time of removal, the complete record in this case consisted of the original state court complaint -- as required by 28 U.S.C. § 1446(a) -- and the sworn affidavit of Rhonda Jacobs that accompanied defendants' Notice of Removal.  After this case arrived in federal court, plaintiffs submitted their motion to remand and Angela Atkins' declaration.  Thereafter, on December 9, 2011, plaintiffs filed their first amended complaint, which need not be considered on the motion to remand.

Mrs. Atkins' declaration, given "under penalty of perjury," states in pertinent part that

> in approximately 2002, I began renting a work station from Hair We Are.  During that time, Hair We Are sold products

7

>commonly used at hair salons, including gels, creams, shampoos, and conditioners. When I ran out of product sold to me by other suppliers, while I rented a booth on the premises, I purchased the products at issue in this lawsuit directly from Hair We Are . . . . Some of those products included Redken color creams and glosses.

(Atkins Decl. at ¶ 4). The Jacobs affidavit appears to refute plaintiffs' version of events, admitting that Hair We Are may have sold Mrs. Atkins some shampoos and conditioners while she was a booth renter, but maintaining that "Hair We Are neither sold nor supplied" Mrs. Atkins with any other hair or nail products, "including but not limited to hair dye or acrylic nail products for use in rendering her hair and nail services." (Jacobs Aff. at ¶ 4-5).

Generally, district courts are encouraged to take a wide view of the available information when ruling on a motion to remand, reviewing the entire record and "'determin[ing] the basis of joinder by any means available.'" Aids Counseling & Testing Center v. Group W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964)). While the Fourth Circuit has not directly addressed whether courts may consider post-removal affidavits and declarations to resolve a claim of fraudulent joinder, other courts of appeal have approved the practice. Specifically, courts reviewing fraudulent joinder claims have been permitted to consider "summary judgment-type evidence, such as affidavits" that "amplify or clarify" plaintiff's claims, except "when or to the extent that they present new causes

8

of action or theories." See, e.g. Griggs v. State Farm Lloyds, 181 F.3d 694, 699-702 (5th Cir. 1999) (citing Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256 (5th Cir. 1995)); Legg v. Wyeth, 428 F.3d 1317, 1322 (11th Cir. 2005) (record for fraudulent joinder determination may be "supplemented by any affidavits and deposition transcripts submitted by the parties"). At the same time, this court has adhered to the rule, also followed in the Fifth and Eleventh Circuits, that a "plaintiff must not be allowed to re-plead the complaint in an attempt to divest this court of jurisdiction by hindsight." Justice v. Branch Banking & Trust Co., 2009 WL 853993, *7 (S.D. W. Va. Mar 24, 2009); see also, e.g., Cavallini, 44 F.3d at 265 (5th Cir. 1995) ("removal jurisdiction should be determined on the basis of the state court complaint at the time of removal, and . . . a plaintiff cannot defeat removal by amending it"); Legg, 428 F.3d at 1322 (relevant pleading for fraudulent joinder determination is the complaint that existed at time of removal). To synthesize these holdings: in evaluating a claim of fraudulent joinder, a district court may consider post-removal affidavits, but not to the extent that they present new theories or causes of action.

It is, then, the original state court complaint, as attached to the Notice of Removal, with which the court must concern itself for the purposes of the motion to remand. The Jacobs affidavit should also be considered, inasmuch as it was part of the

9

record at the time of removal. Finally, the court may also look to the Atkins declaration, to the extent that it merely amplifies and clarifies the allegations in the complaint.

2. Claims against Hair We Are

In order to defeat the motion to remand, defendants must prove that there is no possibility that the plaintiffs could prevail on any claim against non-diverse defendant Hair We Are. As noted above, this burden is a heavy one. The court must resolve all factual and legal issues in the plaintiffs favor, <u>Pritt v. The Republican Nat'l Comm.</u>, 1 F.Supp.2d 590, 592 (S.D. W. Va. 1998), and even a "glimmer of hope," on the plaintiffs' part must result in remand. <u>Hartley</u>, 187 F.3d at 426. With that in mind, the court now turns to defendants' two primary contentions -- first, that plaintiffs' allegations do not amount to a legally sufficient claim against Hair We Are, and second, that even if plaintiffs have established a <u>prima facie</u> claim, Hair We Are is immune from liability as either a "service provider" or "occasional seller."

a. Sufficiency of Plaintiffs' Allegations

Plaintiffs' claims for negligence and strict liability (Counts 1 and 2) are products liability claims. The elements required for the negligence claim are, as always: duty, breach,

10

causation, and damage. In West Virginia, the elements of a strict liability claim based on design defect are as follows: (1) that the product was not reasonably safe (2) for its intended use (3) due to a defective design feature (4) which proximately caused the plaintiff's injury. Morningstar v. Black & Decker Mfg. Co., 253 S.E.2d 666 (W. Va. 1979). Even if a product is not defectively designed, a strict liability claim may also be based on the failure to adequately warn about dangers which may be present when the product is used in a certain way. Id. at Syl. Pt. 2. For such a claim, a plaintiff must establish that (1) the product was defective (2) due to the absence of an adequate warning that a reasonably prudent manufacturer should have included at the time the product was made and (3) which proximately caused the plaintiff's injury. Id. at 682. Strict liability extends to all those present in a product's "chain of distribution." Dunn v. Kanawha County Bd. of Educ., 459 S.E.2d 151, 157 (W. Va. 1995).

Defendants contend that plaintiffs' original complaint fails to state a valid claim against Hair We Are under any of the above theories. First, they contend, plaintiffs' use of "collective identification" throughout the complaint -- that is, simply referring generally to "defendants" rather than referring specifically to Hair We Are each time it is implicated -- obfuscates Hair We Are's role in the case and thus "may . . . run afoul of Fed

11

R. Civ. P. 8(a)."  (Def. L'Oreal's Resp. to Mot. to Remand at 6). In support of this contention, defendants cite <u>Cavallini v. State Farm Mut. Auto Ins.</u>, in which the Fifth Circuit found that a defendant had been fraudulently joined when he was not named individually in any of the counts of a complaint but was (1) named in the caption, (2) named in the introductory paragraph, and (3) potentially referred to in paragraphs making allegations against collective "Defendants." 44 F.3d at 260 (5th Cir. 1995).

  Superficially, this case resembles <u>Cavallini</u>.  Apart from a two-sentence allegation stating Hair We Are's place of incorporation, there is not a single specific reference to Hair We Are anywhere in the complaint.  But defendants themselves point out the critical difference.  Whereas in <u>Cavallini</u>, there was no basis for concluding that the non-diverse defendant, a local insurance agent, was intended to be implicated in any of the collective allegations, in this case -- and in defendants' own words -- it is "obvious" from the "structure of the complaint" that all of the defendants are alleged to have engaged in similar conduct:  the manufacture, distribution, or supplying of dangerously defective goods.  (<u>See</u> Def. L'Oreal's Resp. to Mot. to Remand at 6).  When multiple defendants are alleged to have engaged in such similar activity, it is neither unreasonable nor improper for plaintiffs to employ such shorthand.  Moreover, the Atkins declaration clarifies

12

Hair We Are's specific role: as the end supplier of the very products at issue in this case. (Atkins Decl. at ¶ 4). As a result, while plaintiffs' collective allegations render their pleading less clear than it could be, they do not doom plaintiffs' claims in this instance.

In a similar vein, defendants also contend that plaintiffs fail to adequately identify the products at issue in this case. Certainly, Rule 8 requires a pleading that is specific enough to give a defendant notice of the claims against it, which include, in the products liability context, some description of the allegedly defective goods. Here, plaintiffs have identified the manufacturers of the products, the specific types of products at issue (hair dyes and acrylic nail products), and have further limited their description to only those products containing benzene and benzene derivatives. (Compl. at ¶¶ 6, 9, 10, 22). The Atkins declaration adds that at least some of the products at issue were "Redken color creams and glosses," and provides additional details about the circumstances under which the products were supplied to her by Hair We Are. (Atkins Decl. at ¶¶ 3-4). As a result, plaintiffs have provided sufficient information about the allegedly defective product to put defendants on notice and open the door to discovery.

13

It is further alleged that those products were not reasonably safe for their intended use due to a design defect, namely, that they contained dangerous amounts of a known carcinogen. (Compl. at ¶ 16). Even to the extent that the products were not defectively designed, it is claimed that they did not contain adequate warnings about the dangers inherent when employed as they were by Mrs. Atkins. (Id. at ¶ 18). The products' design defects and inadequate warnings are said to be the proximate causes of Mrs. Atkins' cancer. (Id. at ¶ 20). Finally, Hair We Are, a retailer in the business of selling such products, was present in the products' chain of distribution. (Id. at ¶¶ 6, 9, 22; Atkins Decl. at ¶¶ 3-4). Under West Virginia law, that is all that is required to state a prima facie claim for strict product liability.

b. Hair We Are's Defenses

Next, the court turns to whether Hair We Are is immune from liability to plaintiffs by the very nature of plaintiffs' claim. Defendants propose two such scenarios, arising from the "service provider"[2] and "occasional seller"[3] defenses. However, neither defense is applicable.

---

[2] See Foster v. Memorial Hosp. Assoc. of Charleston, 219 S.E.2d 916 (W. Va. 1975)(provider of services cannot be held liable on
(Continued)

First, while Hair We Are does provide services to its clients, there is simply no suggestion in the record that Mrs. Atkins was a client of Hair We Are, or that she was provided with any services; thus, the allegedly defective goods were not transferred incident to the provision of services. A firm that provides services may also be in the business of selling products, which is what plaintiffs allege in the complaint. (Compl. at ¶ 22; Atkins Decl. at ¶ 4). Under those circumstances, the "service provider" rule offers no protection.

Second, with respect to the "occasional seller" defense, the court first notes that it is unaware of any West Virginia case adopting such a rule. But even if this court were to do so, the rule could not be applied to this case, at this stage, on these facts, certainly not in light of the requirement to resolve all genuine issues of fact and law in favor of the plaintiffs. Pritt, 1 F.Supp.2d at 592. Plaintiffs allege that Hair We Are was in the business of selling products containing benzene and benzene derivatives (Compl. at ¶ 22; Atkins Decl. at ¶ 4). Defendants claim that is not the case.

---

non-fault based warranty claim for goods transferred incident to contract for services).

[3] See Restatement (Second) of Torts § 402A cmt. f ("[Strict liability rule] does not . . . apply to the occasional seller of . . . products who is not engaged in that activity as a part of his business."); see also, e.g., Griffin Indus. v. Jones, 975 S.W.2d 100, 103 (Ky. 1998) (rule of strict liability "does not apply to the occasional seller of an allegedly defective product").

(Jacobs Aff. at ¶¶ 5-6). Such issues are ordinarily left to juries to decide. They are surely not to be decided by a court in ruling on a motion to remand, before discovery has commenced. "[A] jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . uncertain questions of law and fact." Hartley, 187 F.3d 422.

In sum, plaintiffs have sufficiently alleged all the elements of a strict liability claim against non-diverse defendant Hair We Are. The court concludes that plaintiffs have established, at minimum, a possibility of relief against Hair We Are. As a result, there is not complete diversity among the parties, and this court is without subject matter jurisdiction under 28 U.S.C. § 1332.

### III.

For the foregoing reasons, it is ORDERED that plaintiffs' motion to remand be, and it hereby is, granted.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: January 20, 2012

_____
John T. Copenhaver, Jr.
United States District Judge

16